# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

LEV SHAFER, *et al.*,

    Plaintiffs,

                      Case No. 2:17-cv-1098

    v.                      Chief Magistrate Judge Elizabeth P. Deavers

KARRIC SQUARE PROPERTIES,
LLC, *et al.*,

    Defendants.

## OPINION AND ORDER

Defendant Karric Square Properties, LLC ("Karric Square") obtained a judgment against Plaintiffs following default on an agreed judgment entry establishing a payment plan. Thereafter, that judgment was placed with Defendant Finance System of Green Bay, Inc. ("FSGB") for collection. Following collection efforts by FSGB, Plaintiffs filed this action, asserting claims for alleged violations under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq.*, and state-law claims of defamation. With the consent of the parties (ECF No. 11), 28 U.S.C. § 636(c), this matter is before the Court for consideration of FSGB's Motion for Judgment on the Pleadings (ECF No. 12) and Motion for Summary Judgment (ECF No. 15). For the reasons that follow, FSGB's Motion for Judgment on the Pleadings is **DENIED AS MOOT** and its Motion for Summary Judgment is **GRANTED**.

# I.[1]

**A.   The Premises, Lease, and Assignment**

Karric is the present owner of real property located at 5803–5807 Karric Square Drive, Dublin, Ohio 43014 ("the Premises"). (Declaration of Sheila Sanders, ECF No. 16-1 ("Sanders Declaration"), ¶ 2.)[2] On or about September 19, 1997, Karric's predecessor owner, Borror Realty Company, entered into a lease agreement ("the Lease") with Dr. Susan E. Richards for lease of the Premises. (*Id*. at ¶ 3; ECF No. 16-1 at PAGEID ## 162–84 (copy of the Lease).) The Lease provided for, *inter alia*, the recovery of attorney's fees and costs under certain circumstances. (Lease, ECF No. 16-1 at PAGEID # 177.)

Following a series of assignments not relevant to the matters presently before the Court, on or about September 1, 2014, Karric and Natural Health Chiropractic, Inc. entered into the "Lease Assignment, Consent, Assumption, Release, and Amendment Agreement" ("the Assignment") through which Natural Health Chiropractic, Inc. assigned the leasehold interest in the Premises to Deal Breakers, LLC ("Deal Breakers"). (Sanders Declaration, ¶ 3; ECF No. 16-1 at PAGEID ## 185–92 (copy of the Assignment).) The Assignment provides in relevant part as follows: "Assignee [Deal Breakers] hereby accepts such assignment and assumes all of Assignor's [Natural Health Chiropractic, Inc.] rights, duties, obligations and liabilities as tenant under the Lease, whether arising before, on or after the Effective Date [September 1, 2014]." (Assignment, ECF No. 16 at PAGEID # 186.) Plaintiffs Lev Shafer and Oleg Razuvayev personally guaranteed the Assignment. (*Id*. at PAGEID # 189.)

---

[1] For ease of reference when setting out some of the background facts, the Court refers to evidence in the record submitted in connection with Karric's Motion for Summary Judgment (ECF No. 16).

[2] Ms. Sanders is the asset manager for Midland Management, LLC ("Midland"), which performs management services for Karric. (*Id*. at ¶ 1.)

**B.      The 2015 State Court Action and the Agreed Judgment Entry**

Sometime thereafter, Deal Breakers defaulted under the Lease. (Sanders Declaration, ¶ 3.) Karric filed an action in the Franklin County Court of Common Pleas ("the State Court") against Deal Breakers and the instant Plaintiffs, Case Number 15 CV 003249, seeking unpaid rent in the amount of $46,501.08, plus additional rent, late fees, interest, and other applicable fees as set forth in the Lease and the Assignment ("the 2015 State Court Action"). (*Id*. at ¶ 4.)

Karric, Deal Breakers, and instant Plaintiffs Shafer and Razuvayev, all represented by legal counsel, thereafter resolved the matter in the State Court Action through an Agreed Judgment Entry. (*Id*.) On July 2, 2015, the State Court entered the Agreed Judgment Entry (*id*.), which provides as follows:

> NOW COMES, Plaintiff Karric Square Properties, LLC and Defendants Deal Breakers, LLC, Lev Shafer, and Oleg Razuvayev ("Defendants"), through counsel, who now represent to the Court that this case has been settled and compromised and that Defendants, jointly and severally, agree to confess judgment in the amount of $46,501.08, plus interest at the rate of 18% per annum from March 1, 2015, attorney's fees of $1,736.43, collection costs, court costs, interest at the statutory rate from the date of judgment, and any attorney's fees arising from Defendants' breach of this Agreed Judgment Entry.
>
> As an accommodation to Defendants, Plaintiff has agreed that it will accept Twenty One Thousand and 00/100 Dollars ($21,000.00) as settlement in full of its judgment payable as follows: Three Hundred and 00/100 Dollars ($300.00) per week beginning on or before Monday, July 13, 2015, and on or before the subsequent Monday of each week thereafter until the sum of Twenty One Thousand and 00/100 Dollars ($21,000.00) is fully paid which will satisfy this judgment in full.
>
> Plaintiff agrees that it will not cause any executions to issue against Defendants, other than Certificates of Judgment to be filed, as long as Defendants make each and every payment as agreed upon herein. Should Defendants default however, Plaintiff is free to execute at will and without notice. If Defendants comply with the terms of this agreement, Plaintiff shall issue satisfactions of this judgment to Defendants for filing.
>
> The Court having no objection to the settlement agreement and terms therein, does hereby ADJUDGE, ORDER, AND DECREE that judgment is granted

against Defendants Deal Breakers, LLC, Lev Shafer, and Oleg Razuvayev, jointly and severally, in the amount of $46,501.08, plus interest at the rate of 18% per annum from March 1, 2015, attorney's fees of $1,736.43, collection costs, court costs, interest at the statutory rate from the date of judgment, and any attorney's fees arising from Defendants' breach of this Agreed Judgment Entry and that the settlement agreement, the terms, and the payment plan incorporated herein is hereby **CONFIRMED**.

**SO ORDERED**.

(Agreed Judgment Entry, ECF No. 15-1 (emphasis in the original).)

**C.    Collection Efforts and Disputed Information**

On September 1, 2016, Karric placed with FSGB an account in the names of Plaintiffs Shafer and Razuvayev as well as Deal Breakers ("the Account"). (Affidavit of Lori Schroetter, ECF No. 15-2, PAGEID ## 138–41, ¶ 5 ("Schroetter Affidavit"); notes regarding the Account, Exhibit 1 to Schroetter Affidavit, ECF No. 15-2, PAGEID ## 142–43.)[3] When the Account was placed with FSGB, FSGB was advised that the Account was the result of a default from judgment in the State Court Action. (ECF No. 15-2 at PAGEID # 142.)[4] Karric provided to FSGB a copy of the Lease, a copy of the Agreed Judgment Entry, a copy of a ledger, and a copy of a tenant listing sheet. (ECF No. 15-1, PAGEID ## 134–37; Plaintiffs' Exhibits D and C, ECF No. 18-1.)

After the Account was placed, FSGB began collection efforts. (*Id*.; Schroetter Affidavit at ¶ 7.)  FSGB sent an initial demand notice to Plaintiffs Shafer and Razuvayev as well as to Deal Breakers and attempted to reach Plaintiffs by telephone. (ECF No. 15-2 at PAGEID # 142;

---

[3] Lori Schroetter is FSGB's Compliance Officer who has access to information regarding accounts placed for collection with FSGB. (*Id*. at ¶¶ 3–4.) FSGB's notes regarding the Account were made contemporaneously by the FSGB employee(s) involved with the collection attempts and kept in the normal course of business. (*Id*. at ¶ 5.)

[4] Plaintiffs concede that they "failed to make payments[.]" (ECF No. 13 at 2; ECF No. 18 at 2.)

4

Schroetter Affidavit at ¶ 7; Plaintiffs' Exhibit C, ECF No. 18-1 at PAGEID # 219 (copy of FSGB's initial notice).) In the initial demand notice addressed to Deal Breakers dated September 2, 2016, FSGB, identifying itself as a debt collection agency, advised that Deal Breakers' creditor was Karric and the account number referred to the State Court Action, No. 15-cv-3249. (ECF No. 18-1 at PAGEID # 219.) FSGB further advised that the principal amount due was $41,736.08 and the interest was $11,320.20, for a balance due of $53,056.28. (*Id.*) FSGB also advised Deal Breakers as follows:

> Your creditor [Karric] has placed your bill for collection. . . . As of the date of this letter, you owe $53056.28. Because of interest, late charges, and other charges that may vary from day to day, the amount due on the day you pay may be greater. Hence, if you pay the amount shown above, an adjustment may be necessary after we receive your check. For further information, write to the above address or call 920-431-2121.
>
> Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing that you dispute the debt within 30 days from receiving this notice, this office will: obtain verification of the debt or obtain a copy of the judgment and mail you a copy of such judgment or verification. If you request this office in writing within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.

(*Id.*)

On September 15, 2016, FSGB spoke with Plaintiff Razuvayev who stated that Plaintiffs "had agreed to settle the debt for $21,000 and he would not pay more than that. Collector advised that the payment plan was broken and the settlement judgment states that full amount of the debut is due if the payment plan is broken." (ECF No. 15-2 at PAGEID # 142.) The next day, Plaintiff Razuvayev advised FSGB that "the store was going out of business and they are willing to pay $300 per week but want to keep the terms of the original settlement of $21,000 less payments already made." (*Id.*)

When FSGB asked Karric if it would accept the originally agreed-upon amount of $21,000, Karric advised it would not accept that amount and wanted the full amount under the Agreed Judgment Entry. (*Id*.) On September 20, 2016, FSGB notified Plaintiff Razuvayev that Karric refused the settlement offer of $21,000 but advised that Karric would accept the $300 a month payment plan on the higher amount. (*Id*.) On April 18, 2017, FSGB spoke with Plaintiffs who requested settlement for $16,000 made in monthly payments. (*Id*.) FSGB advised that Karric refused to settle the balance. (*Id*.)

On April 24, 2017, FSGB reported the debt to a credit reporting agency, marking it as disputed. (*Id*.; Schroetter Affidavit at ¶ 11.) On April 26, 2017, FSGB spoke to Plaintiff Razuvayev and again advised that Karric did not want to settle following Plaintiff's default on the settlement set forth in the Agreed Judgment Entry. (ECF No. 15-2 at PAGEID # 143.)

On June 26, 2017, FSGB received a letter from Plaintiffs' counsel asking that the settlement payment plan set forth in the Agreed Judgment Entry be reinstated. (*Id*.; Schroetter Affidavit at ¶ 12.)

Thereafter, FSGB received four credit disputes regarding the Account submitted by Plaintiffs to TransUnion LLC. (ECF No. 15-2 at PAGEID # 143; Schroetter Affidavit at ¶¶ 13–16; copies of disputes, Exhibits 2, 3, 4, 5 to Schroetter Affidavit, ECF No. 15-2 at PAGEID ## 144–55.) After investigating and re-investigating the information and documentation on file from Karric regarding the Account, FSGB responded to each credit dispute, affirming that the disputed information was accurate as of the date reported. (*Id*.)

**D.    The Present Action**

Plaintiffs Shafer and Razuvayev (who were Defendants in the 2015 State Court Action) originally filed the present action in the Court of Common Pleas for Franklin County, Ohio, on

April 16, 2015, which was removed to this Court on December 15, 2017, on the basis of federal question jurisdiction, 28 U.S.C. § 1331. (ECF No. 1.) Plaintiffs Shafer and Razuvayev assert federal claims for alleged violations of the FCRA and state law claims for defamation against Karric and FSGB. (ECF No. 5.)

FSGB has moved for judgment on the pleadings on all claims asserted against it. (ECF No. 12.) Plaintiffs have opposed that motion (ECF No. 13) and FSGB has filed a reply (ECF No. 14). After the Motion for Judgment on the Pleadings was fully briefed, FSGB also moved for summary judgment on Plaintiffs' claims. (ECF No. 15.)[5] Plaintiffs oppose FSGB's Motion for Summary Judgment (ECF No. 18) and Karric has filed a reply memorandum (ECF No. 20).

## II.

### A.     Standard for Judgment on the Pleadings

Rule 12(c) of the Federal Rules of Civil Procedure allows a party to "move for judgment on the pleadings." Fed. R. Civ. P. 12(c). The Court evaluates a motion filed under Rule 12(c) using the same standard as a Rule 12(b)(6) motion to dismiss. *Roth v. Guzman*, 650 F.3d 603, 605 (6th Cir. 2011). To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a plaintiff must satisfy the basic federal pleading requirements set forth in Federal Rule of Civil Procedure 8(a). Under Rule 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Thus, Rule 8(a) "imposes legal *and* factual demands on the authors of complaints." *16630 Southfield Ltd., P'Ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013) (emphasis in original).

---

[5] Karric has also moved for summary judgment. (ECF No. 16.)

Although this pleading standard does not require "'detailed factual allegations,' . . . [a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action,'" is insufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A complaint will not "suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Instead, to survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Id*. (quoting *Twombly*, 550 U.S. at 570). Facial plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct." *Flagstar Bank*, 727 F.3d at 504 (citations omitted).

**B.     Standard for Summary Judgment**

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The moving party has the initial burden of proving that no genuine issue of material fact exists, and the court must draw all reasonable inferences in the light most favorable to the nonmoving party." *Stansberry v. Air Wisconsin Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (internal quotations omitted); *cf.* Fed. R. Civ. P. 56(e)(2) (providing that if a party "fails to properly address another party's assertion of fact" then the Court may "consider the fact undisputed for purposes of the motion").

"Once the moving party meets its initial burden, the nonmovant must 'designate specific facts showing that there is a genuine issue for trial.'" *Kimble v. Wasylyshyn*, 439 F. App'x 492,

495–96 (6th Cir. 2011) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)); *see also* Fed. R. Civ. P. 56(c) (requiring a party maintaining that a fact is genuinely disputed to "cit[e] to particular parts of materials in the record"). "The nonmovant must, however, do more than simply show that there is some metaphysical doubt as to the material facts, . . . there must be evidence upon which a reasonable jury could return a verdict in favor of the non-moving party to create a genuine dispute." *Lee v. Metro. Gov't of Nashville & Davidson Cnty.*, 432 F. App'x 435, 441 (6th Cir. 2011) (internal quotation marks and citations omitted). "When a motion for summary judgment is properly made and supported and the nonmoving party fails to respond with a showing sufficient to establish an essential element of its case, summary judgment is appropriate." *Stansberry*, 651 F.3d at 486 (citing *Celotex*, 477 U.S. at 322–23).

## III.

Plaintiffs assert claims for defamation, libel, and slander. (ECF No. 5 at ¶¶ 22–29.) "Under Ohio law, 'defamation occurs when a publication contains a false statement 'made with some degree of fault, reflecting injuriously on a person's reputation, or exposing a person to public hatred, contempt, ridicule, shame or disgrace, or affecting a person adversely in his or her trade, business or profession.'" *Kontar v. American Geophysical Union*, No. 16-3491, 2017 WL 3402078, at *2 (6th Cir. Jan. 5, 2017) (quoting *Jackson v. City of Columbus*, 117 Ohio St. 3d 328, 331 (2008)). "The manner of publication distinguishes slander, *i.e.*, 'spoken defamatory words,' from libel, *i.e.*, 'written or printed defamatory words.'" *Kontar*, 2017 WL 3402078, at *2 (quoting *Lawson v. AK Steel Corp.*, 121 Ohio App.3d 251, 256 (Ohio Ct. App. 1997)).

> When the plaintiff is a private figure, "the elements of a defamation claim, whether libel or slander, are '(a) a false and defamatory statement concerning another; (b) an unprivileged publication to a third party; (c) fault amounting at least to negligence on the part of the publisher; and (d) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication.'"

9

*Id.* (quoting *Harris v. Bornhorst*, 513 F.3d 503, 522 (6th Cir. 2008) (internal citations omitted)).

Here, Plaintiffs specifically allege as follows:

23. Defendants Karric Square and Finance System [FSGB] have negligently published false and misleading statements regarding the financial obligations of the plaintiffs.

24. Defendant Karrie Square negligently published false and misleading statements regarding the nature, amount, and terms of plaintiffs' obligations to Finance System, among others.

25. Defendant Finance System published false and misleading statements regarding the nature, amount, and terms of plaintiffs' obligations to credit reporting agencies, among others.

26. The defendants knew or should have known that the statements were false at the time the statements were published.

27. Defendants were at least negligent in not reviewing the four corners of the settlement agreement which was reduced to an Agreed Judgment Entry before publishing false information regarding the terms of the debt.

28. The statements constitute defamation per se as they have affected the plaintiffs injuriously in their trade or profession.

29. The defendants did not possess a privilege to publish these false statements.

(ECF No. 5 at ¶¶ 22–29.)

In its Motion for Judgment on the Pleadings, Motion for Summary Judgment and related briefing, FSGB contends that federal law preempts Plaintiffs' defamation claim. (ECF No. 12 at 4–6; ECF No. 14 at 3–7; ECF No. 15 at 6–8; ECF No. 20 at 2–7.) FSGB also contends that even if the defamation claim was not preempted, Plaintiffs cannot establish the elements necessary to prevail on their defamation claim. (ECF No. 12 at 6–7; ECF No. 14 at 3–7; ECF No. 15 at 8–10; ECF No. 20 at 7–8.) Having reviewed the motions and related briefing, the Court need not resolve Plaintiff's Motion for Judgment on the Pleadings because, for the reasons that follow, FSGB is entitled to summary judgment on Plaintiffs' defamation claim.

### A. Preemption

FSGB first argues that 15 U.S.C. § 1681h(e) of the FCRA preempts Plaintiffs' defamation claim. (ECF No. 15 at 6–8; ECF No. 21 at 2–7.) Section 1681h(e) provides as follows:

> Except as provided in sections 1681n and 1681o of this title, no consumer may bring any action or proceeding in the nature of defamation, invasion of privacy, or negligence with respect to the reporting of information against any consumer reporting agency, any user of information, or any person who furnishes information to a consumer reporting agency, based on information disclosed pursuant to section 1681g, 1681h, or 1681m of this title, or based on information disclosed by a user of a consumer report to or for a consumer against whom the user has taken adverse action, based in whole or in part on the report except as to false information furnished with malice or willful intent to injure such consumer.

15 U.S.C. § 1681h(e). Although Section 1681h(e) does not define "malice" or "willful intent to injure," most courts applying this section have adopted the meaning of the term in a defamation context. *Saint Torrance v. Firstar*, 529 F. Supp. 2d 836, 844 (S.D. Ohio 2007). "Information is therefore 'furnished with malice' when the furnisher 'either knows [the information] is false or . . . the [furnisher] acts in reckless disregard of its truth or falsity.'" *Id.* (quoting *Wolfe v. MBNA Am. Bank*, 485 F. Supp. 2d 874, 883 (W.D. Tenn. April 25, 2007)). In addition, most courts define "willful intent to injure" "'as requiring a showing that the defendant 'knowingly and intentionally committed an act in conscious disregard for the rights of others.'" *Id.* (quoting *Wolfe*, 485 F. Supp. 2d at 883).

Here, Plaintiff has not shown that FSGB acted with "malice" or a "willful intent to injure" Plaintiffs. *See* 15 U.S.C. § 1681h(e). Plaintiffs assert that FSGB was "at least negligent" in not reviewing the Agreed Judgment Entry "before publishing false information regarding the terms of the debt." (ECF No. 5 at ¶ 27.) The uncontroverted record, however, establishes that FSGB reviewed the Account information, communicated with Karric, and investigated Plaintiffs'

credit dispute.  (Schroetter Affidavit, ¶¶ 5, 9–16; ECF No. 15-2 at PAGEID # 142–43.)  FSGB specifically confirmed that Karric would not accept an amount less than the full amount confessed to in the Agreed Judgment Entry.  (Schroetter Affidavit, ¶¶ 5, 10; ECF No. 15-1 at PAGEID ## 134–37; ECF No. 15-2 at PAGEID # 142–43.)  Finally, FSGB noted in its response to TransUnion LLC that Plaintiffs disputed the Account.  (ECF No. 15-2 at PAGEID ## 146, 150.)  Nothing in this record establishes that FSGB acted with the "malice" or a "willful intent to injure" Plaintiffs.

Plaintiffs disagree, pointing to unsworn allegations in their Complaint that they believe show that FSGB acted with the necessary "malice" or a "willful intent to injure."  (ECF No. 18 at 3–4.)  However, once the moving party has met its burden at the summary judgment stage, Plaintiffs, as the nonmoving parties, "'may not rest upon its mere allegations or denials of the adverse party's pleadings[,]'" but "'must set forth specific facts' showing that there is a 'genuine issue' for trial."  *Scadden v. Werner*, 677 F. App'x 996, 1001 (6th Cir. 2017) (quoting *Ellington v. City of E. Cleveland*, 689 F.3d 549, 552 (6th Cir. 2012)); *cf. Mitchell v. Toledo Hosp.*, 964 F.2d 577, 584 (6th Cir. 1992) ("It is now quite well-established that, in order to withstand a motion for summary judgment, the party opposing the motion must present 'affirmative evidence' to support his/her position; a mere 'scintilla of evidence' is insufficient.") (citations omitted).  Accordingly, citations to allegations in an unverified Complaint do not overcome FSGB's properly supported Motion for Summary Judgment.  *Id*.

Plaintiffs next complain that FSGB "was not instructed to apply any particular interest rate or principal amount owing" but instead "attempted to interpret the [Agreed] Judgment entry and in wrongfully construing the same, did so at their own peril" and thereby engaged in the "unauthorized practice of law[.]"  (ECF No. 18 at 4.)  Plaintiffs' argument, unsupported by any

12

authority, is not well taken. As set forth above, FSGB confirmed whether Karric would accept the terms of the original settlement of $21,000, and later advised Plaintiffs that Karric would not accept that amount and wanted the full amount Plaintiffs confessed to in the Agreed Judgment Entry. (ECF No. 15-2 at PAGEID ## 134–37, 142.) This uncontroverted record does not establish that FSGB acted with the requisite malice on willful intent to injure. *Cf. Jones v. City of Franklin*, 677 F. App'x 279, 282 (6th Cir. 2017) ("Additionally, conclusory allegations, speculation, and unsubstantiated assertions are not evidence, and are not sufficient to defeat a well-supported motion for summary judgment. . . . Therefore, in order to defeat summary judgment, the party opposing the motion must present affirmative evidence to support its position[.]") (internal citations omitted).

Plaintiffs go on to criticize the terms of the Agreed Judgment Entry, arguing that certain terms are vague, including the interest rate, what constitutes a "default," and how Karric should have calculated the amount owed to them. (ECF No. 18 at 5–6.) Plaintiffs further contend that FSGB's "complete disregard for the vagueness of the judgment [Agreed Judgment Entry] against Plaintiffs, coupled with FSGB's incorrect interpretation of the judgment is the absolute definition of a 'conscious disregard for the rights of others.'" (*Id*. at 5.) As a preliminary matter, the Court notes that Plaintiffs' contention that the Agreed Judgment Entry was vague undermines their assertion that FSGB acted with malice or consciously disregarded Plaintiffs' rights when it purportedly interpreted the Agreed Judgment Entry.

Moreover, as set forth above, the plain terms of the Agreed Judgment Entry establish that Plaintiffs Shafer and Razuvayev and Deal Breakers jointly and severally confessed to "judgment in the amount of $46,501.08, plus interest at the rate of 18% per annum from March 1, 2015, attorney's fees of $1,736.43, collection costs, court costs, interest at the statutory rate from the

date of judgment, and any attorney's fees arising from Defendants' breach of this Agreed Judgment Entry[,]" but, as an accommodation, Karric agreed to accept $21,000 as settlement in full of its judgment pursuant to a payment plan. (ECF No. 15-1 at PAGEID # 134.) The Agreed Judgment Entry further provided that Karric "will not cause any executions against Defendants [here, instant Plaintiffs], other than Certificates of Judgment to be filed, as long as Defendants make each and every payment as agreed upon herein. Should Defendants default, however, Plaintiff [Karric] is free to execute at will and without notice." (*Id.*) Based on these terms, the Court is not persuaded that Defendants, who have conceded that they failed to make payments (*see* ECF No. 18 at 2), did not know what would happen if they did not make the payments required under the Agreed Judgment Entry or that an 18% interest rate would apply to the confessed judgment amount. Notably, Plaintiffs were represented by counsel when they agreed to the terms of the Agreed Judgment Entry (ECF No. 15-1 at PAGEID # 134) and Plaintiffs concede that "they would be responsible for the entire judgment of $46,501.08" if they defaulted (ECF No. 18 at 2).

To the extent that Plaintiffs attack the terms of the applied interest rate in an attempt to vacate or alter the Agreed Judgment Entry itself, that position is also unavailing as "[f]ederal district courts do not stand as appellate courts for decisions of state courts." *Hall v. Callahan*, 727 F.3d 450, 453 (6th Cir. 2013) (explaining that the Rooker-Feldman doctrine precludes federal courts from exercising jurisdiction over a claim alleging error in a state court decision) (citing, *inter alia Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *Dist. of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983)).

Plaintiffs nevertheless insist that there are "quite obviously misrepresentations by both Karric and FSGB, to each other; which ultimately caused the false misrepresentations to be

published." (ECF No. 18 at 5 (referring to the applied interest rate and question in the tenant listing sheet as to whether the full amount of $46,501.06 can be collected)).) However, as previously discussed, Plaintiffs specifically confessed to judgment in the amount of $46,501.08 and the Agreed Judgment Entry explicitly states that the 18% per annum rate will run from March 1, 2015, and that the statutory rate of interest would begin to run from the date of judgment, namely, July 2, 2015. (ECF No. 15-1 at PAGEID ## 134–35.)

Finally, Plaintiffs contend that FSGB "had a duty to review the document to ensure its efforts were factually warranted, despite what may have been represented to FSGB by Karric." (ECF No. 18 at 5.) Plaintiffs, however, cite to no authority requiring FSGB to conduct an independent investigation to confirm the accuracy of the Account when Karric referred it to FSGB for collection. *Cf. Smith v. Transworld Sys., Inc.*, 953 F.2d 1025, 1032 (6th Cir. 1992) (affirming that a debt collector is not required to conduct an "independent investigation" as to whether the amount of a debt is accurate in order to avoid liability under 15 U.S.C. § 1692e(2)(A)). Moreover, as previously discussed, FSGB reviewed, investigated, and communicated with Karric when asked if Karric would accept $21,000 to settle the debt which repudiates Plaintiffs' unsubstantiated assertions that FSGB consciously disregarded Plaintiffs' rights or failed to confirm that its actions were warranted.

In short, nothing in the record establishes that FSGB acted with "malice" or a "willful intent to injure" Plaintiffs. Accordingly, Section 1681h(e) of the FCRA preempts Plaintiffs' defamation claim against FSGB.

**B.    False and defamatory**

Even if their defamation claim was not preempted, Plaintiffs cannot establish for the reasons previously discussed that FSGB made false and defamatory statements, an essential

element of their defamation claim. *Kontar*, 2017 WL 3402078, at *2. "To survive a motion for summary judgment in a defamation action, the plaintiff must make a sufficient showing of the existence of every element essential to his or her case." *Cummerlander v. Patriot Preparatory Acad. Inc.*, 86 F. Supp. 3d 808, 829 (S.D. Ohio 2015) (citing *Daubenmire v. Sommers*, 156 Ohio App.3d 322 (Ohio Ct. App. 2004)). Because Plaintiffs cannot show that FSGB made false and defamatory statements, their defamation claim fail as a matter of law. *Id*.

Finally, the record discussed above reveals that FSGB verified with Karric the amount to be collected from Plaintiffs. This record establishes that FSGB was not negligent and exercised reasonable care when attempting to collect on the Account from Plaintiffs and reporting the Account. For all of these reasons, FSGB is entitled to summary judgment on Plaintiffs' defamation claim.

## IV.

Plaintiffs also allege that FSGB violated the FCRA as follows:

> 31. Karric Square and Finance System [FSGB] have furnished information relating to a [sic] plaintiffs to a consumer reporting agency while knowing or having reasonable cause to believe that the information is inaccurate.
>
> 32. Karric Square and Finance System [FSGB] have negligently and recklessly violated various provisions of the Fair Credit Report Act.

(ECF No. 5 at ¶¶ 31–32.) Although not cited in the Complaint, when opposing summary judgment, Plaintiffs refer to 15 U.S.C. § 1681s-2(b) as the basis for their cause of action. (ECF No. 18 at 8.)

"The FCRA exists 'to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy.'" *Boggio v. USAA Federal Sav. Bank*, 696 F.3d 611, 614 (6th Cir. 2012) (quoting *Safeco Ins. Co. v. Burr*, 551 U.S. 47, 52 (2007)). "The FCRA imposes liability on both consumer reporting agencies and furnishers of information to those

16

agencies for willful or negligent violations under the FCRA." *Shaw v. Equifax Info. Sols., Inc.*, 204 F. Supp. 3d 956, 959 (E.D. Mich. 2016) (citing *Nelski v. Trans Union, LLC*, 86 F. App'x 840, 844 (6th Cir. 2004)). "To that end, § 1681s-2 is designed to prevent 'furnishers of information' from spreading inaccurate consumer-credit information." *Boggio*, 696 F.3d at 614.

While the FCRA does not create a private cause of action for a violation of Section 1681s-2(a), "a consumer may recover damages for a willful violation of 15 U.S.C. § 1681s-2(b)." *Ogle v. BAC Home Loans Serv. LP*, 924 F. Supp. 2d. 902, 912 (S.D. Ohio 2013). "To bring a claim against a furnisher of information under § 1681s–2(b), the plaintiff must 'show that the furnisher received notice from a consumer reporting agency, not the plaintiff, that the credit information is disputed'" and that "upon receiving this notice, the furnisher of information acted with a 'reckless disregard' in performing its duties under § 1681s–2(b)[.]" *Id*. (internal citations omitted). In addition, "a threshold showing of inaccuracy or incompleteness is necessary in order to succeed on a claim under § 1681s-2(b)." *Pittman v. Experian Info. Sols., Inc.*, 901 F.3d 619, 629 (6th Cir. 2018); *see also Shaw v. Equifax Info. Sols., Inc.*, 204 F. Supp. 3d 956, 959 (E.D. Mich. 2016) ("Inaccuracy is an essential element of a claim for negligent or willful violation of the FCRA under section 1681s-2(b)") (citing *Spence v. TRW, Inc.*, 92 F.3d 380, 382 (6th Cir. 1996)).

Here, Plaintiffs assert that they disputed the Account four times and that FSGB "had notice from the credit reporting agencies at that time[.]" (ECF No. 18 at 8.) Plaintiffs argue that they "have stated a plausible claim under the FRCA [sic]" because "FSGB 'investigated' the dispute but makes no note of what exactly they did to ensure its accuracy. *Id*. [Schroetter Affidavit at ¶¶ 11 –16.] Nothing changes, despite the disputes by the Plaintiffs and FSGB made no effort to provide accounting for the alleged debts." (*Id*.) Plaintiffs' arguments are not well

17

taken.  Initially, the Court notes that, in response to FSGB's well-supported Motion for Summary Judgment, Plaintiffs must show by specific facts in the record that there is a genuine issue for trial, *see Kimble v. Wasylyshyn*, 439 F. App'x 492, 495–96 (6th Cir. 2011), not that Plaintiffs "have stated a plausible claim" for relief.  (ECF No. 18 at 8.)  In addition, while Plaintiffs complain that there is no detail of exactly how FSGB investigated, Plaintiffs do not cite to any evidence showing that FSGB's investigation was deficient or negligent.  *Cf. Jones*, 677 F. App'x at 282.  Notably, as discussed at length above, FSGB received and reviewed information from Karric, communicated with Defendant Razuvayev, confirmed that Karric would not accept a $21,000 settlement following Plaintiffs' default, and reviewed its Account information when communicating with TransUnion LLC.  This uncontroverted record therefore does not show that FSGB acted with "reckless disregard" in performing its duties under Section 1681s-2(b).  *See Ogle*, 924 F. Supp. 2d. at 912.

Moreover, as previously discussed, Plaintiffs have not established that FSGB published inaccurate or incomplete information.  Instead, the record shows that FSGB reviewed and relied on the information Karric provided to it and reported the amount owing on Plaintiffs' confessed judgment pursuant to the Agreed Judgment Entry.  While Plaintiffs now apparently believe that Karric should have reinstated the terms of the original settlement offer after Plaintiffs admittedly failed to make payments, Plaintiffs, who were represented by counsel, agreed to the terms of the Agreed Judgment Entry, which speaks for itself.  (ECF No. 15-1 at PAGEID ## 134–37.) Plaintiffs have offered no evidence establishing that the confessed judgment amount in the Agreed Judgment Entry is inaccurate or incomplete.  *See Jones*, 677 F. App'x at 282.  For all of these reasons, FSGB is entitled to summary judgment on Plaintiffs' FCRA claim.

## V.

For the foregoing reasons, FSGB's Motion for Judgment on the Pleadings (ECF No. 12) is **DENIED AS MOOT** and its Motion for Summary Judgment (ECF No. 15) is **GRANTED**. The Clerk is **DIRECTED** to enter judgment in favor of FSGB on Plaintiffs' claims against it.

**IT IS SO ORDERED.**

Date: March 21, 2019
/s/ *Elizabeth A. Preston Deavers*
ELIZABETH A. PRESTON DEAVERS
CHIEF UNITED STATES MAGISTRATE JUDGE