IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**LEV SHAFER,** *et al.*,

      Plaintiffs,

                        Case No. 2:17-cv-1098

      v.                   Chief Magistrate Judge Elizabeth P. Deavers

**KARRIC SQUARE PROPERTIES,
LLC,** *et al.*,

      Defendants.

## OPINION AND ORDER

Defendant Karric Square Properties, LLC ("Karric") obtained a judgment against Plaintiffs following default on an agreed judgment entry establishing a payment plan. Thereafter, that judgment was placed with Defendant Finance System of Green Bay, Inc. ("FSGB") for collection. Following collection efforts by FSGB, Plaintiffs filed this action, asserting claims for alleged violations under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq.* and state-law claims for defamation. With the consent of the parties (ECF No. 11), 28 U.S.C. § 636(c), this matter is before the Court for consideration of Karric's Motion for Summary Judgment (ECF No. 16) and Motion for Judicial Notice (ECF No. 23). For the reasons that follow, the Motion for Summary Judgment is **GRANTED** and the Motion for Judicial Notice is **DENIED AS MOOT**.

### I.

**A.**    **The Premises, Lease, and Assignment**

Karric is the present owner of real property located at 5803–5807 Karric Square Drive,

Dublin, Ohio 43014 ("the Premises"). (Declaration of Sheila Sanders, ECF No. 16-1 ("Sanders Declaration"), ¶ 2.)[1] On or about September 19, 1997, Karric's predecessor owner, Borror Realty Company, entered into a lease agreement ("the Lease") with Dr. Susan E. Richards for lease of the Premises. (*Id.* at ¶ 3; ECF No. 16-1 at PAGEID ## 162–84 (copy of the Lease).) The Lease provided for, *inter alia*, the recovery of attorney's fees and costs under certain circumstances. (Lease, ECF No. 16-1 at PAGEID # 177.)

Following a series of assignments not relevant to the matters presently before the Court, on or about September 1, 2014, Karric and Natural Health Chiropractic, Inc. entered into the "Lease Assignment, Consent, Assumption, Release, and Amendment Agreement" ("the Assignment") through which Natural Health Chiropractic, Inc. assigned the leasehold interest in the Premises to Deal Breakers, LLC ("Deal Breakers"). (Sanders Declaration, ¶ 3; ECF No. 16-1 at PAGEID ## 185–92 (copy of the Assignment).) The Assignment provides in relevant part as follows: "Assignee [Deal Breakers] hereby accepts such assignment and assumes all of Assignor's [Natural Health Chiropractic, Inc.] rights, duties, obligations and liabilities as tenant under the Lease, whether arising before, on or after the Effective Date [September 1, 2014]." (Assignment, ECF No. 16 at PAGEID # 186.) Plaintiffs Lev Shafer and Oleg Razuvayev personally guaranteed the Assignment. (*Id.* at PAGEID # 189.)

**B.     The 2015 State Court Action and the Agreed Judgment Entry**

Sometime thereafter, Deal Breakers defaulted under the Lease. (Sanders Declaration, ¶ 3.) Karric filed an action in the Franklin County Court of Common Pleas ("the State Court") against Deal Breakers and the instant Plaintiffs, Case Number 15 CV 003249, seeking unpaid

---

[1] Ms. Sanders is the asset manager for Midland Management, LLC ("Midland"), which performs management services for Karric. (*Id.* at ¶ 1.)

rent in the amount of $46,501.08, plus additional rent, late fees, interest, and other applicable fees as set forth in the Lease and the Assignment ("the 2015 State Court Action"). (*Id*. at ¶ 4.)

Karric, Deal Breakers, and instant Plaintiffs Shafer and Razuvayev, all represented by legal counsel, thereafter resolved the matter in the State Court Action through an Agreed Judgment Entry. (*Id*.) On July 2, 2015, the State Court entered the Agreed Judgment Entry (*id*.), which provides as follows:

> NOW COMES, Plaintiff Karric Square Properties, LLC and Defendants Deal Breakers, LLC, Lev Shafer, and Oleg Razuvayev ("Defendants"), through counsel, who now represent to the Court that this case has been settled and compromised and that Defendants, jointly and severally, agree to confess judgment in the amount of $46,501.08, plus interest at the rate of 18% per annum from March 1, 2015, attorney's fees of $1,736.43, collection costs, court costs, interest at the statutory rate from the date of judgment, and any attorney's fees arising from Defendants' breach of this Agreed Judgment Entry.
>
> As an accommodation to Defendants, Plaintiff has agreed that it will accept Twenty One Thousand and 00/100 Dollars ($21,000.00) as settlement in full of its judgment payable as follows: Three Hundred and 00/100 Dollars ($300.00) per week beginning on or before Monday, July 13, 2015, and on or before the subsequent Monday of each week thereafter until the sum of Twenty One Thousand and 00/100 Dollars ($21,000.00) is fully paid which will satisfy this judgment in full.
>
> Plaintiff agrees that it will not cause any executions to issue against Defendants, other than Certificates of Judgment to be filed, as long as Defendants make each and every payment as agreed upon herein. Should Defendants default however, Plaintiff is free to execute at will and without notice. If Defendants comply with the terms of this agreement, Plaintiff shall issue satisfactions of this judgment to Defendants for filing.
>
> The Court having no objection to the settlement agreement and terms therein, does hereby ADJUDGE, ORDER, AND DECREE that judgment is granted against Defendants Deal Breakers, LLC, Lev Shafer, and Oleg Razuvayev, jointly and severally, in the amount of $46,501.08, plus interest at the rate of 18% per annum from March 1, 2015, attorney's fees of $1,736.43, collection costs, court costs, interest at the statutory rate from the date of judgment, and any attorney's fees arising from Defendants' breach of this Agreed Judgment Entry and that the settlement agreement, the terms, and the payment plan incorporated herein is hereby **CONFIRMED**.

**SO ORDERED**.

(Agreed Judgment Entry, ECF No. 16-1, PAGEID ## 193–94 (emphasis in the original).)

**C.     Default and Collection Efforts**

On or about February 1, 2016, Deal Breakers and the instant Plaintiffs Shafer and Razuvayev defaulted on their obligations under the Agreed Judgment Entry. (Sanders Declaration, ¶ 4.)[2] Karric had an agreement with FSGB "for collection efforts for delinquent accounts for a number of tenants, including but not limited to" Plaintiffs Shafer and Razuvayev. (*Id*. at ¶ 5.) Karric furnished to FSGB a copy of the Agreed Judgment Entry (ECF No. 16-1, PAGEID ## 193–94), a document entitled "Tenant Listing Sheet" (*id.* at PAGEID # 197), and a copy of Midland's ledger reflecting Deal Breakers' transactions (*id*. at PAGEID ## 198–02.) (Sanders Declaration, ¶ 6.) This was the only information that Karric provided to FSGB. (*Id*.) The Tenant Listing Sheet, printed on FSGB letterhead, identifies, *inter alia*, Karric as the creditor, instant Plaintiffs Shafer and Razuvayev as the tenants, and the Property's address. (Tenant Listing Sheet, ECF No. 16, PAGEID # 197.) The Tenant Listing Sheet identifies the "Amount of Judgment Past Due" as $16,235.00. (*Id*.) A section entitled "Comments" on the Tenant Listing Sheet includes the following language: "Since they defaulted on the judgment payment arrangements – can we collect the full amount originally due of $46,501.08?" (*Id*.) The ledger Karric provided to FSGB reflects an ending balance of $16,235. (ECF No. 16-1 at PAGEID # 202.)

In a letter addressed to Deal Breakers dated September 2, 2016, FSGB, identifying itself as a debt collection agency, advised that Deal Breakers' creditor was Karric and the account number referred to the State Court Action, No. 15-cv-3249. (ECF No.19-1 at PAGEID # 280.)

---

[2] Plaintiffs concede that they "failed to make payments[.]" (ECF No. 19 at 2.)

4

FSGB further advised that the principal amount due was $41,736.08 and the interest was $11,320.20, for a balance due of $53,056.28. (*Id.*) FSGB also advised Deal Breakers as follows:

> Your creditor [Karric] has placed your bill for collection. . . . As of the date of this letter, you owe $53056.28. Because of interest, late charges, and other charges that may vary from day to day, the amount due on the day you pay may be greater. Hence, if you pay the amount shown above, an adjustment may be necessary after we receive your check. For further information, write to the above address or call 920-431-2121.
>
> Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing that you dispute the debt within 30 days from receiving this notice, this office will: obtain verification of the debt or obtain a copy of the judgment and mail you a copy of such judgment or verification. If you request this office in writing within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.

(*Id.*)

**D.     The Present Action**

Plaintiffs Shafer and Razuvayev (who were Defendants in the 2015 State Court Action) originally filed the present action in the Court of Common Pleas for Franklin County, Ohio, on April 16, 2015, which was removed to this Court on December 15, 2017, on the basis of federal question jurisdiction, 28 U.S.C. § 1331. (ECF No. 1.) Plaintiffs Shafer and Razuvayev assert federal claims for alleged violations of the FCRA and state law claims for defamation against Karric and FSGB. (ECF No. 5.)

Karric has moved for summary judgment on all claims asserted against it. (ECF No. 16.)[3] Plaintiffs oppose Karric's Motion (ECF No. 19) and Karric has filed a reply memorandum (ECF No. 21). On January 15, 2019, the State Court issued a Decision and Entry denying the

---

[3] FSGB has moved for judgment on the pleadings and for summary judgment. (ECF Nos. 12, 15.)

motion of instant Plaintiffs Shafer and Razuvayev and Deal Breakers for relief from judgment and declaratory relief, which is the subject of Karric's Motion for Judicial Notice (ECF No. 23), and which Plaintiffs have opposed (ECF No. 25). Karric has filed a reply. (ECF No. 26.)

**II.**

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The moving party has the initial burden of proving that no genuine issue of material fact exists, and the court must draw all reasonable inferences in the light most favorable to the nonmoving party." *Stansberry v. Air Wisconsin Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (internal quotations omitted); *cf.* Fed. R. Civ. P. 56(e)(2) (providing that if a party "fails to properly address another party's assertion of fact" then the Court may "consider the fact undisputed for purposes of the motion").

"Once the moving party meets its initial burden, the nonmovant must 'designate specific facts showing that there is a genuine issue for trial.'" *Kimble v. Wasylyshyn*, 439 F. App'x 492, 495–96 (6th Cir. 2011) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)); *see also* Fed. R. Civ. P. 56(c) (requiring a party maintaining that a fact is genuinely disputed to "cit[e] to particular parts of materials in the record"). "The nonmovant must, however, do more than simply show that there is some metaphysical doubt as to the material facts, . . . there must be evidence upon which a reasonable jury could return a verdict in favor of the non-moving party to create a genuine dispute." *Lee v. Metro. Gov't of Nashville & Davidson Cnty.*, 432 F. App'x 435, 441 (6th Cir. 2011) (internal quotation marks and citations omitted). "When a motion for summary judgment is properly made and supported and the nonmoving party fails to respond

with a showing sufficient to establish an essential element of its case, summary judgment is appropriate." *Stansberry*, 651 F.3d at 486 (citing *Celotex*, 477 U.S. at 322–23).

### III.

Plaintiffs assert claims for defamation, libel, and slander. (ECF No. 5 at ¶¶ 22–29.) "Under Ohio law, 'defamation occurs when a publication contains a false statement 'made with some degree of fault, reflecting injuriously on a person's reputation, or exposing a person to public hatred, contempt, ridicule, shame or disgrace, or affecting a person adversely in his or her trade, business or profession.'" *Kontar v. American Geophysical Union*, No. 16-3491, 2017 WL 3402078, at *2 (6th Cir. Jan. 5, 2017) (quoting *Jackson v. City of Columbus*, 117 Ohio St. 3d 328, 331 (2008)). "The manner of publication distinguishes slander, *i.e.*, 'spoken defamatory words,' from libel, *i.e.*, 'written or printed defamatory words.'" *Kontar*, 2017 WL 3402078, at *2 (quoting *Lawson v. AK Steel Corp.*, 121 Ohio App.3d 251, 256 (Ohio Ct. App. 1997)).

> When the plaintiff is a private figure, "the elements of a defamation claim, whether libel or slander, are '(a) a false and defamatory statement concerning another; (b) an unprivileged publication to a third party; (c) fault amounting at least to negligence on the part of the publisher; and (d) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication.'"

*Id.* (quoting *Harris v. Bornhorst*, 513 F.3d 503, 522 (6th Cir. 2008) (internal citations omitted)). "To survive a motion for summary judgment in a defamation action, the plaintiff must make a sufficient showing of the existence of every element essential to his or her case." *Cummerlander v. Patriot Preparatory Acad. Inc.*, 86 F. Supp. 3d 808, 829 (S.D. Ohio 2015) (citing *Daubenmire v. Sommers*, 156 Ohio App.3d 322 (Ohio Ct. App. 2004).

Here, Plaintiffs specifically allege as follows:

23. Defendants Karric Square and Finance System [FSGB] have negligently published false and misleading statements regarding the financial obligations of the plaintiffs.

7

24. Defendant Karrie Square negligently published false and misleading statements regarding the nature, amount, and terms of plaintiffs' obligations to Finance System, among others.

25. Defendant Finance System published false and misleading statements regarding the nature, amount, and terms of plaintiffs' obligations to credit reporting agencies, among others.

26. The defendants knew or should have known that the statements were false at the time the statements were published.

27. Defendants were at least negligent in not reviewing the four corners of the settlement agreement which was reduced to an Agreed Judgment Entry before publishing false information regarding the terms of the debt.

28. The statements constitute defamation per se as they have affected the plaintiffs injuriously in their trade or profession.

29. The defendants did not possess a privilege to publish these false statements.

(ECF No. 5 at ¶¶ 22–29.)

Karric contends that federal law preempts Plaintiffs' defamation claim. (ECF No. 16 at 5–6; ECF No. 21 at 4–5.) Karric also contends that even if the defamation claim was not preempted, Plaintiffs have failed to establish that the statements were false and defamatory, that there was an unprivileged publication to a third party, and that there was special harm. (ECF Nos. 16, 19.)

**A.    Preemption**

Karric argues that 15 U.S.C. § 1681h(e) of the FCRA preempts Plaintiffs' defamation claim. (ECF No. 16 at 5–6; ECF No. 21 at 4–5.) Section 1681h(e) provides as follows:

> Except as provided in sections 1681n and 1681o of this title, no consumer may bring any action or proceeding in the nature of defamation, invasion of privacy, or negligence with respect to the reporting of information against any consumer reporting agency, any user of information, or any person who furnishes information to a consumer reporting agency, based on information disclosed pursuant to section 1681g, 1681h, or 1681m of this title, or based on information disclosed by a user of a consumer report to or for a consumer against whom the user has taken adverse

8

action, based in whole or in part on the report except as to false information furnished with malice or willful intent to injure such consumer.

Therefore, in order to fall within the Section 1681h(e), a claim must be based on information disclosed pursuant to Sections 1681g, 1681h, or 1681m, or "based on information disclosed by a user of a consumer report to or for a consumer against whom the user has taken adverse action, based in whole or in part on the report except as to false information furnished with malice or willful intent to injure such consumer." *Id.*; *see also Barry v. Experian Info. Sol., Inc.*, No. 2:16-cv-09515, 2018 WL 3341785, at *8 (S.D. W.Va. July 6, 2018) (stating that the court must first determine whether the claim falls within the scope of § 1681h(e)) (citations omitted). Sections 1681g and 1681h apply only to consumer reporting agencies, which Karric is not. 15 U.S.C. §§ 1681a (defining "consumer reporting agency" as any person who, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages "in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports"), 1681g, 1681h; *see also Barry*, 2018 WL 3341785, at *8 (stating that Sections 1681g and 1681h apply to consumer reporting agencies) (citations omitted). Section 1681m applies only to "users taking adverse actions on [the] basis of information contained in consumer reports[.]" 15 U.S.C. § 1681m.

In this case, Karric is not a user of consumer reports as to Plaintiffs under Section 1681m. Karric did not furnish Plaintiffs' credit reports nor did it take adverse action based on information contained in such reports. As previously noted and as set forth in more detail below, Karric relied on the Agreed Judgment Entry, Tenant Listing Sheet, and ledger. Because the allegations against Karric do not fall within the scope of Section 1681h(e), this section of the

FCRA does not preempt Plaintiff's defamation claim as to Karric. Accordingly, the Court need not and does not consider whether Karric acted with malice or willful intent.

**B.      False and defamatory**

Having concluded for purposes of the present motions that Section 1681h(e) does not preempt Plaintiffs' defamation claim, the Court next considers the substance of Plaintiffs' claim. As set forth above, Karric provided FSGB with the Agreed Judgment Entry, the Tenant Listing Sheet, and ledger regarding Deal Breakers' transactions. (Sanders Declaration, ¶ 6.) Karric contends that the information reflected in these documents is true. (*Id.* at ¶¶ 6–7 (citing information provided); ECF No. 16 at 4; ECF No. 21 at 1–2.) Plaintiffs disagree, arguing that the Agreed Judgment Entry "states that Karric Square will accept '($21,000.00) as settlement in full of its judgment,' with no clear indication that the full amount would become due in the event of default, or even what would constitute default." (ECF No. 19 at 2.) However, as previously discussed, the Agreed Judgment Entry specifically provides as follows:

> NOW COMES, Plaintiff Karric Square Properties, LLC and Defendants Deal Breakers, LLC, Lev Shafer, and Oleg Razuvayev ("Defendants"), through counsel, who now represent to the Court that this case has been settled and compromised and that Defendants, jointly and severally, agree to confess judgment in the amount of $46,501.08, plus interest at the rate of 18% per annum from March 1, 2015, attorney's fees of $1,736.43, collection costs, court costs, interest at the statutory rate from the date of judgment, and any attorney's fees arising from Defendants' breach of this Agreed Judgment Entry.

(ECF No. 16-1 at PAGEID # 193.) The Agreed Judgment Entry also detailed that Karric agreed to accept a lesser amount ($21,000) as settlement in full of its judgment pursuant to a payment plan and that Karric "will not cause any executions against Defendants, other than Certificates of Judgment to be filed, as long as Defendants make each and every payment as agreed upon herein. Should Defendants default, however, Plaintiff is free to execute at will and without

10

notice." (*Id.*) The terms of the Agreed Judgment Entry therefore address what happens in the event of default.[4]

Moreover, in its discovery responses, Karric explained the amount due at specific times under the Agreed Judgment Entry, including following Plaintiffs' default:

> 5. What amount does Karric Square Properties, LLC claim to be currently due and owing to it from Plaintiffs or Deal Breakers, LLC. Delineate between principal, interest, and other amounts allegedly owing.
>
> **Answer: $46,501.08, plus interest at the rate of 18% per annum from March 1, 2015, attorney's fees of $1,736.43, collection costs, court costs, and interest at the statutory rate of judgment.**
>
> 6. What amount does Karrie Square Properties, LLC claim was due and owing by Plaintiffs or Deal Breakers, LLC on September 2, 2016. Delineate between principal, interest, and other amounts allegedly owing.
>
> **Answer: Prior to default (and accounting for all payments made) Defendants owed a total of $16,234.00. As of September 2, 2016, Defendants owed a total of $46,501.08, plus interest at the rate of 18% per annum from March 1, 2015, attorney's fees of $1,736.43, collection costs, court costs, and interest at the statutory rate of judgment.**

(ECF No. 19 at PAGEID # 282 (emphasis in original).)

While Plaintiffs now apparently dispute that the Agreed Judgment Entry provides that the full amount of the debt (rather than the reduced amount of $21,000) was due upon their default, the terms of the Agreed Judgment Entry speak for themselves. To the extent that Plaintiffs attack some of the terms of the Agreed Judgment Entry (*see*, *e.g.*, *id*. at 4 (complaining, *inter alia*., that neither Karric nor FSGB "took into consideration the discrepancies within the Agreed Judgment Entry as it related to which appropriate interest rate was to be applied"), the record reflects that Plaintiffs were represented by counsel at the time of the settlement agreement in the

---

[4] While Plaintiffs now suggest that it is not clear "what would constitute default[,]" Plaintiffs concede that they "failed to make payments" under the Agreed Judgment Entry. (ECF No. 19 at 2.)

State Court Action and the Agreed Judgment Entry. (Sanders Declaration, ¶ 4 (averring Deal Breakers and instant Plaintiffs Shafer and Razuvayev were represented by counsel); Agreed Judgment Entry, ECF No. 16-1 at PAGEID # 193 (same).) If Plaintiffs, however, seek to vacate or alter the Agreed Judgment Entry itself, that position is also unavailing as "[f]ederal district courts do not stand as appellate courts for decisions of state courts." *Hall v. Callahan*, 727 F.3d 450, 453 (6th Cir. 2013) (explaining that the Rooker-Feldman doctrine precludes federal courts from exercising jurisdiction over a claim alleging error in a state court decision) (citing, *inter alia Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *Dist. of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983)).

Plaintiffs argue, however, that Karric must have provided false information because the Tenant Listing Sheet reflected "a past due amount of $16,000 . . . [which] is vastly different than the amount reported to the credit reporting bureaus, and the response to Karric from FSGB which mentions pursuing $46,501 from the Agreed Judgment Entry" and because neither Defendant "took into consideration the amount the Plaintiffs had paid to Karric when pursuing the $46,501.48 from the Agreed Judgment Entry." (ECF No. 19 at 4.) Plaintiffs' argument is not well taken. As a preliminary matter, the uncontroverted Sanders Declaration establishes that no representative of Karric furnished information relating to Plaintiffs (or Deal Breakers) to a credit reporting agency. (Sanders Declaration, ¶ 8.) Next, Plaintiffs' assertion that the Tenant Listing Sheet apparently contains false information because it reflects differing amounts (*see* Tenant Listing Sheet, ECF No. 16-1 at PAGEID # 197 (*compare* "Amount of Judgment Past Due $16,235.00[,]" *with* "Comments[:] Since they defaulted on the judgment payment arrangements – can we collect the full amount originally due of $46,501.06?") and failed to account for payments made by Plaintiffs is also unavailing. As previously discussed, $16,235.00 was the

12

amount Plaintiffs owed (accounting for all of Plaintiffs' payments) prior to default (*see* ledger, ECF No. 16-1 at PAGEID # 202), while $46,501.08 was the amount Plaintiffs confessed to and owed under the Agreed Judgment Entry (plus interest of 18% annum, attorney's fees, collection costs, and court costs). (ECF No. 16-1 at PAGEID ## 193–94; ECF No. 19 at PAGEID # 282.) Plaintiffs have provided no evidence establishing that the Tenant Listing Sheet contains false information.

Plaintiffs also contend that the Agreed Judgment Entry "does not indicate when the 18% per annum would be calculated from in the event the Plaintiffs 'defaulted.'" (ECF No. 19 at 2.) Plaintiff's argument is not well taken. The Agreed Judgment Entry specifically states that the 18% per annum rate will run from March 1, 2015, and that the statutory rate of interest would begin to run from the date of judgment, namely, July 2, 2015. (ECF No. 16-1 at PAGEID ## 193–95.)

In short, there is no evidence in the record that Plaintiffs did not confess to judgment in the amount of $46,501.08 (plus interest, attorney fees, collection costs, and court costs) or that Karric provided false information under the terms of the Agreed Judgment Entry. Having failed to show that Karric provided false information, Plaintiffs cannot establish a claim of defamation. *See Cummerlander*, 86 F. Supp. 3d at 829 (stating that a plaintiff must make a sufficient showing of the existence of every element essential to a defamation claim in order to survive summary judgment).

**C.   Special harm**

Even if Karric's statements were false and were published without privilege, Plaintiffs have still failed to establish another element of their defamation claim, special harm. Plaintiffs contend on summary judgment that special harm "is not at issue because the credit reporting

bureaus having obtained evidence from FSGB and Karric involving the alleged debt undoubtedly hinders the Plaintiffs from obtaining business loans, personal financing, and will continue to do so for the indefinite future." (ECF No. 19 at 3.)

Plaintiffs' argument is not well taken. "Defamation falls into two categories, defamation *per quod* or *per se*. In defamation *per quod*, a publication is merely capable of being interpreted as defamatory and the plaintiff must allege and prove damages. Defamation *per se* occurs if a statement, on its face, is defamatory." *Kendel v. Local 17-A United Food and Commercial Workers*, 835 F. Supp. 2d 421, 433 (N.D. Ohio 2011) (internal citations omitted)). A publication is actionable *per se* and a plaintiff need not show special harm if it contains the following: "'(1) written statements which falsely charge the plaintiff with the commission of a crime, or (2) oral declarations which falsely charge the plaintiff with the commission of a crime involving moral turpitude which subjects the offender to infamous punishment[.]'" *Shepard v. Griffin Servs., Inc.*, No. 19032, 2002 WL 940110, at *9 (Ohio Ct. App. May 10, 2002) (citations omitted). "[W]hether a statement is defamatory *per se* is a question of law for the trial court to determine." *Northeast Ohio Elite Gymnastics Training Ctr., Inc. v. Osborne*, 183 Ohio App. 3d 104, 112 (Ohio Ct. App. 2009) (citations omitted).

Here, Plaintiffs' Complaint alleges that Karric's statements "constitute defamation per se as they have affected the plaintiffs injuriously in their trade or profession." (ECF No. 5 at ¶ 28.) However, nothing in the Agreed Judgment Entry, Tenant Listing Sheet, or ledger falsely charges Plaintiffs with "the commission of a crime involving moral turpitude which subjects the offender [Plaintiffs] to infamous punishment[.]" *Shepard*, 2002 WL 940110, at *9 (internal quotation marks and citations omitted); *see also* Agreed Judgment Entry, ECF No. 16-1 at PAGEID ## 193–94; Tenant Listing Sheet, *id*. at PAGEID # 197; ledger, *id*. at PAGEID ## 198–202; ECF

No. 19 at 3 (implicitly conceding in opposing summary judgment that their claim is defamation *per quod* as they assert special harm exists as they are "undoubtably hinder[ed] . . . from obtaining business loans, personal financing, and will continue to do so for the indefinite future"). Accordingly, Karric's statements do not constitute defamation *per se*. *Northeast Ohio Elite Gymnastics Training Ctr., Inc.*, 183 Ohio App. 3d at 109.

In the absence of defamation *per se*, Plaintiffs must prove special damages. *Id*. "Special damages are damages of such a nature that they do not follow as a necessary consequence of the [complained injury]." *Id*. (internal quotation marks and citations omitted). As previously discussed, Plaintiffs simply assert without evidentiary support that special damages are not at issue because "the credit reporting bureaus having obtained evidence from FSGB and Karric involving the alleged debt undoubtedly hinders the Plaintiffs from obtaining business loans, personal financing, and will continue to do so for the indefinite future." (ECF No. 19 at 3.) Plaintiffs' unsupported assertions are insufficient to show special damages and withstand summary judgment. *Jones v. City of Franklin*, 677 F. App'x 279, 282 (6th Cir. 2017) ("Additionally, conclusory allegations, speculation, and unsubstantiated assertions are not evidence, and are not sufficient to defeat a well-supported motion for summary judgment. . . . Therefore, in order to defeat summary judgment, the party opposing the motion must present affirmative evidence to support its position[.]") (internal citations omitted).

For all of these reasons, Karric is entitled to summary judgment on Plaintiffs' defamation claim.

**D.  FCRA**

Plaintiffs also allege that Karric violated the FCRA as follows:

31.  Karric Square and Finance System [FSGB] have furnished information relating to a [sic] plaintiffs to a consumer reporting agency while knowing or having reasonable cause to believe that the information is inaccurate.

32.  Karric Square and Finance System [FSGB] have negligently and recklessly violated various provisions of the Fair Credit Report Act.

(ECF No. 5 at ¶¶ 31–32.)  Although not cited in the Complaint, when opposing summary judgment, Plaintiffs refer to 15 U.S.C. § 1681s-2(b) as the basis for their cause of action.  (ECF No. 19 at 8.)

"The FCRA exists 'to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy.'"  *Boggio v. USAA Federal Sav. Bank*, 696 F.3d 611, 614 (6th Cir. 2012) (quoting *Safeco Ins. Co. v. Burr*, 551 U.S. 47, 52 (2007)).  "The FCRA imposes liability on both consumer reporting agencies and furnishers of information to those agencies for willful or negligent violations under the FCRA."  *Shaw v. Equifax Info. Sols., Inc.*, 204 F. Supp. 3d 956, 959 (E.D. Mich. 2016) (citing *Nelski v. Trans Union, LLC*, 86 F. App'x 840, 844 (6th Cir. 2004)).  "To that end, § 1681s-2 is designed to prevent 'furnishers of information' from spreading inaccurate consumer-credit information."  *Boggio*, 696 F.3d at 614.

As set forth above, a "consumer reporting agency" is defined as

any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports.

15 U.S.C. § 1681a(f).  "While § 1681s-2 does not define 'furnisher,' courts have defined the term as 'any entity which transmits information concerning a particular debt owed by a particular customer to consumer reporting agencies.'"  *LaBreck v. Mid-Mich Credit Bur.*, No. 1:16-cv-

16

1160, 2016 WL 6927454, at *2 (W.D. Mich. Nov. 28, 2016) (quoting *Carney v. Experian Info. Sol., Inc.*, 57 F. Supp. 2d 496, 501 (W.D. Tenn. 1999)); *see also Dominguez v. Capital One, N.A.*, No. 16-12896, 2017 WL 3097801, at *2 (E.D. Mich. June 27, 2017) (same) (citations omitted), *adopted by* 2017 WL 3085779 (E.D. Mich. July 20, 2017).

While the FCRA does not create a private cause of action for a violation of Section 1681s-2(a), "a consumer may recover damages for a willful violation of 15 U.S.C. § 1681s-2(b)." *Ogle v. BAC Home Loans Serv. LP*, 924 F. Supp. 2d. 902, 912 (S.D. Ohio 2013). "To bring a claim against a furnisher of information under § 1681s–2(b), the plaintiff must 'show that the furnisher received notice from a consumer reporting agency, not the plaintiff, that the credit information is disputed'" and that "upon receiving this notice, the furnisher of information acted with a 'reckless disregard' in performing its duties under § 1681s–2(b)[.]" *Id.* (internal citations omitted).

Here, as previously discussed, Karric has submitted uncontroverted evidence that no representative of Karric furnished information relating to Plaintiffs or Deal Breakers to a credit reporting agency. (Sanders Declaration at ¶ 8.) Plaintiffs nevertheless assert that "Karric had constructive notice of the disputes with the debts with FSGB because FSGB was the agent of Karric" and that Karric thereafter "made no effort to provide accounting for the alleged debts." (ECF No. 19 at 8.) Plaintiffs, however, do not explain or cite to evidence in the record to support their argument. This conclusory and speculative assertion is therefore insufficient to oppose summary judgment. *See Kyle-Eiland v. Neff*, 408 F. App'x 933, 943 (6th Cir. 2011) (explaining that the summary judgment standard "does not require that all bald assertions, opinions, or even genuinely held beliefs asserted by the nonmoving party be adopted wholeheartedly by a court, even when such assertions are completely unsupported by the record"); *Shockley v. Corr.*

*Healthcare Cos., Inc*., No. 1:16cv599, 2018 WL 1565614, at *7 (S.D. Ohio Mar. 30, 2018) ("Conclusory allegations are not evidence and are not adequate to oppose a motion for summary judgment."); *cf. Mitchell v. Toledo Hosp*., 964 F.2d 577, 584 (6th Cir. 1992) ("It is now quite well-established that, in order to withstand a motion for summary judgment, the party opposing the motion must present 'affirmative evidence' to support his/her position; a mere 'scintilla of evidence' is insufficient.") (citations omitted). Accordingly, Karric is entitled to summary judgment on Plaintiffs' FCRA claim.

Finally, having concluded that Karric's Motion for Summary Judgment is meritorious, Karric's Motion for Judicial Notice is moot and the Court need not address it.

**IV.**

For the foregoing reasons, Karric's Motion for Summary Judgment (ECF No. 16) is **GRANTED** and Karric's Motion for Judicial Notice (ECF No. 23) is **DENIED AS MOOT**. The Clerk is **DIRECTED** to enter judgment in favor of Defendant Karric Square Properties, LLC on Plaintiffs' claims against it.

**IT IS SO ORDERED.**

Date: March 21, 2019            /s/ *Elizabeth A. Preston Deavers*
                                ELIZABETH A. PRESTON DEAVERS
                                CHIEF UNITED STATES MAGISTRATE JUDGE